King, J.
This is a petition in error to reverse a judgment of the court of common pleas rendered at the April Term, 1894, in a case in which Dorsey L. Beall was the plaintiff, and the Lake Shore and Michigan Southern Railway Company was defendant.
A number of errors are assigned.
The petition in the court of common pleas sets forth that, “on the 27th day of July, 1892, the said Charles Hoak was engaged in driving some sheep along a highway about two and one-half or three miles west of Martin, and between said Martin and the city of Toledo. Said highway crossed said railroad at grade. Said Hoak drove said sheep across said crossing shortly in advance of an approaching train on said railroad. After said sheep were across said crossing, a portion of said sheep became frightened and ran back ever said crossing, and said Hoak undertook to follow them. When said Hoak came upon said- crossing in pursuit of said sheep, his foot in some way became fastened in said crossing, and he was held fast and was unable to free himself and was struck by the locomotive of said approaching train, and was thereby severely injured, and bruised, from the effects of which he died within a few hours. Said crossing upon which said Hoak was caught was old and out of repair, and dangerous. The planks used in said crossing were old and worn, and there were large spaces between said planks and the rails of the track of said railroad, and said crossing was otherwise dangerous and out of repair, and the people passing over said crossing were liable to have their feet caught and made fast, by reason of said dangerous spaces and said defective condition of said crossing.”
There was an answer filed, denying all these allegations-of negligence, and alleging that the deceased contributed to the injury which he received and from which he died, and that his own negligence was the cause of the injury.
The allegations of the petition in relation to the negligence of the company are quite general in their character and do not point out the specific defect which was upon the trial relied upon. It seems to have summed itself up in the course of the testimony, in this, that the plaintiff claimed that decedent caught his foot between the flange of the south rail of the north track of the main line of the railroad at a point at the east end of the plank where there was a piece from twelve to eighteen or twenty inches in length split off from the edge of the plank, being an inch to an inch and a half or *607 two inches in width, leaving a space three or four inches wide, perhaps, at the outer end,and narrowing as it went up the plank eighteen or twenty inches, in which he caught his foot. This is the claim which they undertook to make out on the trial.
In the course of the trial, Charles F. Bush was called as a witness, in behalf of the plaintiff, and he was asked if he had noticed the condition of this crossing before that day,- and he said that he had. This witness was asked how he came to notice it — 'and perhaps he was asked whether he had ever been caught there himself — at any rate, he testified that three or four months before this — perhaps six months before, some time in the winter before that summer — he was attempting to haul a load ever this crossing, and the crossing was bare of snow, and he carried some snow and placed it on the track, and while doing this he got his foot caught between the plank and the south rail of the north track. That six years before that, while driving across that road crossing, his horse caught its foot in the same place, as I understand it. All this evidence was objected to, and motions made to rule out, and exceptions taken to the ruling of the court in allowing it to go to the jury.
Upon this I can only say, briefly, that we do not see that the court erred to the prejudice of the plaintiff in error.
The rule seems to be established in this state in the case of Brewing Co. v. Bauer, 50 Ohio St. that evidence of that character will be admitted for the purpose, as the court said, in that case, of tending to prove, as in that case, which was a machine called a lift, that the lift was a device making it dangerous to operate, and that the company had knowledge of this from its previous behavior. This is held substantially, in the case of District of Columbia v. Ames, 107 U. S., 524, which was a sidewalk case, in which it was admitted to show notice to the municipal authorities who had charge of keeping in repair the sidewalks. The authorities, it is true, are not uniform upon that subject, but we think the weight of authority, as it is said in the decision of the learned judge in 50 Ohio St., is in favor of admitting that class of evidence It is true, however, that the occurrence called from Mr. Brush, that his horse got caught, was exceedingly remote; but, undoubtedly, that would go to the weight of the testimony before the jury. We cannot say that it was so remote that for that assignment this judgment ought to be reversed.
Some exceptions are taken to the charge. We do not find that there is any error in the charge. The remarks of the *608 court in reference to the giving of the second request asked by the attorney for defendant below, ■ are excepted to. We do not think those in any way modified the request; and, for myself, I am not certain that the request was applicable. The request was the application of the well known rule, that a person about to cross a railroad should use his senses and look out for approaching danger. That does not seem to me to be applicable to the case, for, upon the whole record, it appears that the decedent knew that the train was approaching. That was the reason he went there; he went there to get his stock off from the track, and not blindly; he knew the train was coming, but whether he appreciated the speed at which it was coming, is, perhaps, another question. But his object in going upon the track was to get the sheep off-from the track.
An exception is noted to a part of the charge where the court said that counsel for plaintiff below, Mr. Hurd, has stated certain things as the law, and it was said by the court:
“This latter proposition we understand to be conceded by counsel for the defendant.”
We do not exactly see how that exception would be of much force, in view of the fact that the court charges, without exception to that part of the charge, that the proposition,as a whole, was conceded by the attorney for the defendant below.
The real questions in this case arise upon the weight of the testimony as bearing upon two questions: Whether the Railroad was negligent in the management of that crossing; and, whether the plaintiff’s intestate was negligent, and, by that negligence,contributed to his injury in going upon that crossing; and therefore I will review the testimony in those respects.
As I have said, the claim of the plaintiff below was that this plank was out of repair; and, in a general way, the plaintiff claimed that the crossing was old, and in some respects, perhaps, rotten; and one or more witnesses said the planks were warped and generally out of repair. But the condition of things had nothing to do wdth the specific defects which, it is claimed, caused the decedent to be caught. That defect was a piece split off from the side of the plank. There cannot be any doubt but that was the claim of the plaintiff below, and upon that his right to recover was based by the administrator. Upon that question this court is not prepared to say that the verdict was against the weight of the evidence. There was, as in most cases of this kind, *609 direct conflict in the testimony of witnesses bearing upon this point. But in the testimony of Eddie Long, Eimer Herkle, Charles Bush, Kittie Hoak, (who saw the crossing for the first time after the injury), and of John Hammond, there is evidence to show that this plank was out of repair at that point; that this piece was split off from the side of the plank — of the south plank, next to the south rail of the north track. The testimony of the witness Eddie Long, while he was a boy of tender years, twelve years of age,has some incidents which give to it considerable weight, as I should think. In the first place, he is the only witness who was in a position to see, or at least his position to see ivas better than any of the other witnesses. He ivas, at the outside, not more than tiventy or thirty feet away from where the accident happened, and he stood, as he testified, looking at Mr. Hoak until just the instant before he was struck by tne engine, and he was on the side of the railway opxiosite to where Mr. Hoak was struck. If his testimony is to be believed, where he had a plain, fair view of all the transactions; and he swears positively that Mr. Hoak got his foot caught between the plank and the rail of the track; that he noticed that place m the plank was there that day: and that about two weeks before that — two or three weeks — he was passing over the crossing, riding a pony, and his pony became frightened at apiece of paper which lay on the track, and he got off the pony and picked up the paper, which lay at the end of the plank, and when he picked up the paper he noticed that the plank was split. He testifies that he remembers that distinct!}'. Two of the men who worked on the section that summer were called by the plaintiff, one in chief, and one in rebuttal, and they both testify to the splitting off of the piece from that plank. I ought to say that there was an exception to the testimony of the witness called in rebuttal, but, as his testimony was given first to rebut the testimony offered by the plaintiff, that these planks were sound when they had been taken up by the section men and placed back again at the time the track was raised, in the fore part of July, it would be testimony in rebuttal to that extent. As to what he said about the remarks of the foreman, that testimony cculd have been made competent. It would have been entirely competent to have asked the foreman if he had made any such speech as was testified to, and to have contradicted him upon that point, and it is entirely probable that that part would be competent in chief in making out the case of plaintiff below, and it would be *610 within the discretion of the court to permit the witness to testify to it in rebuttal. The defendant below did not suffer any injury from that, for it recalled the foreman,-and he contradicted the witness by saying that he had never made any such remark to him at any time, so the testimony is all upon the record upon both sides of that proposition.
_ The contradiction of the witness for the plaintiff, as to the condition of those planks, is based largely upon collateral questions It was claimed by witnesses for the defendant below that the old planks were taken up and new ones put in about April of that year, and that soon thereafter, say in May, the company proceeded to raise both of these tracks, raising the grade from four to six or eight inches along the length of that section between Mil bury and Martin, and they started in and worked at that work all summer long, and that when they came to this crossing it was early in July, and they then, in order to raise the tracks, took up the planks and put them back again, but when they made that change in July,the planks were new. But there were two men working upon that section, engaged in the work of raising the track and taking up the planks and putting them back again, and they say that the planks, when they were put back,were in a rotten and decayed condition,and were not new planks. And there was Mr. Bush, as I said before, who testified that he saw these planks on two occasions, and that they were in the condition described. We think that it was evidence to be submitted to the jury, as to the weight of it,and that the jury were competent to pass upon the testimony of each of these witnesses, and upon that proposition we think that the verdict of the jury ought not to be disturbed.
Upon the other question, as to whether the decedent was negligent in going upon the track, there is also some conflict of testimony as to the actual circumstances under which he went upon the track as to whether, when upon the track, his foot was caught upon the track, or not. I ought not to say that there was very much conflict as to whether his foot was caught; for, as a matter of fact, nobody testified that his foot was not caught; nobody was near enough to testify and say that it was not; it is rather an inference to be drawn from the testimony of witnesses who saw him. One of the witnesses called by the plaintiff was one hundred feet to the northward, and he does not say that his foot was caught in the plank on that track; he says that while ' running across he appeared to stop. Another witness called for the plaintiff, and another, called for the defendant, were *611 sixty rods to the southward. The testimony of those two witnesses, fairly considered, shows that when he reached the south rail of the track, running across it, he stopped, or hesitated, or, as one witness called for the defendant put it, he “stood still” at the instant of time, as near as he can describe it, when the train struck him.
There is some other testimony as to the circumstances, such as the appearance of the shoe. Three or four witnesses testify that the shoe on his left foot was torn. He was taken right from the place of the accident and brought to his house, remained there a few minutes and was removed from there to the hospital, and his wife, and cousin Kitty Hoak, and two men who were there at the house, Haynes and Bates, testified as to the condition of his shoe and as to the condition of his foot. There was some further controversy as to whether he had a wound on his left heel, or whether it was further up his leg, near the calf or the middle of the tendon, as Dr. Hollister put it. But all of that was submitted to the jury. Then the physician who was called upon to testify, and did testify that the wound was five or six inches up on the leg, was shown a statement which he had made after the accident to the company, describing this injury, in which he had stated that it was just on the heel at the attachment of the main tendon to the heel on the left foot, and when this was shown to him upon the cross-examination, he manifested some little surprise that the statement was as it appeared. But, all of that went to the jury, to bear upon the question as to whether he did catch his foot, and we think, upon that single proposition that the verdict of the jury, ought not to be disturbed as being against the weight of the evidence.
And, as a matter of law, then, was he negligent if he went upon the track to drive off his sheep in the face of an approaching train, if there was time enough ordinarily for him to get off the track, unless his foot was caught, and being upon the track, his foot was caught and held until he was struck?
Upon that we think the authorities are: That a man may take some chances to save his property, even though a railroad train is coming. As decided in 80 N. Y., (I read from page 218), in a similar case, or one something like this, in which the court say:
“The horse and wagon had some value,and we may assume, from the humble occupation in which the intestate was engaged, that they were of great value to him. He had the right, and was under some sort of duty to rescue them from *612 danger if he could. He therefore had business in that place where he was wh9n he was killed. It cannot be said that he went there for no purpose, and that he unnecessarily placed himself in danger. The whole transaction took but a moment. He saw the train coming; the impulse to save his property was a natural one. He had no time for reflection. He saw how distant the train was,and,supposing that he could rescue his horse, started. He got across the track, and would have been safe but for the sliding of the wagon wheel, in consequence of the elevated rail. ”
E. J). Potter, Jr., for Plaintiff in Error.
Frank H. IJurd, and George B. Boone., for Defendant in Error.
And so the jury might have said, from the testimony in this case, that Mr. Hoak could have got across the track but for the defect in the plank which caught his foot and detained him for that instant of time which enabled the engine to strike him and kill him.
We think, from reading this testimony, as carefully as we can, that we are not justified in disturbing this verdict, and, therefore, it will be affirmed, but with no penalty.